[No. 1468.]

STATE OF NEVADA, EX REL. SAMUEL DAVIS, APPEL-
LANT, *v.* THE BOARD OF COUNTY COMMISSION-
ERS OF LINCOLN COUNTY, RESPONDENT.

STATUTE OF LIMITATIONS—WHEN WILL BEGIN TO RUN.—The act of Febru-
ary 17, 1873 (Stats. 1873, p. 54), sec. 8, provided for the collection
annually, until payment of certain county bonds, of a special tax to
be applied to payment of the interest on the bonds. The act of Jan-
uary 18, 1877 (Stats. 1877, p. 46), provided that if such interest fund
should be exhausted before all the interest was paid, the coupons
could be presented to the county treasurer, and a certificate of such
presentation indorsed on them, after which they should be paid as
money came into the fund, in the order in which they had been pre-
sented: *Held*, that where coupons were presented, and presentation
indorsed thereon, the statute would not commence to run against
an action to compel levy and collection of the tax for payment till
money came into the fund applicable to such payment.

APPEAL from the District Court of the State of Nevada, Lincoln county; *G. F. Talbot*, District Judge:

Application of Samuel Davis for *mandamus* to the Board of County Commissioners of Lincoln county. Application denied, and petitioner appeals. Reversed.

Petition for writ of mandate to compel the defendants to levy a tax for the payment of interest upon the bonded indebtedness of Lincoln county, created by the act of February 17, 1873. (Stats. 1873, 54.) Section 8 of that act provides as follows: "In addition to the ordinary taxes for county purposes there shall be for the year 1873, and annu-ally thereafter, until the principal and interest of said bonds to be issued shall be fully provided for, as hereinafter pro-vided, to be levied and collected at the same time and in the same manner as other revenues of said county, a special tax to be called the interest tax, of 45 cents on each $100 of taxable property of said county, which tax shall be col-

lected in United States gold and silver coin, and paid over to the county treasurer. The fund derived from this tax shall be applied only to the payment of the interest accruing upon said bonds as herein provided." By a subsequent amendment (Stats. 1877, 46), it was further provided that if the interest fund should be exhausted before all the interest was paid, the coupons could be presented to the county treasurer and a certificate of such presentation endorsed upon them, after which they were to be paid as money came into the fund, in the order of their presentation. The interest coupons of the petitioner, upon which the proceeding was founded, became due from 1880 to 1883, and were presented and the presentation certified to in accordance with the above statute. The tax has not been levied since 1885. The defense was the statute of limitations. The application for the writ was denied, and the petitioner appeals.

*Geo. S. Sawyer* and *Freeman & Bates*, for Appellant:

I. The question as to whether the statute of limitations applied to these bonds and coupons (bonds of Lincoln county) was expressly decided by the supreme court of the United States in the case of *Lincoln County* v. *Luning*, 133 U. S. 532.

II. The trial judge admits the decision of the supreme court of the United States to be as stated, but he seems to think the supreme court of the United States did not properly consider that case, and that if it had been properly considered by them, they would have allowed the plea of the statute of limitations, and he draws this conclusion from his construction of the decision in the case of *Freehill* v. *Chamberlain*, 65 Cal. 603.

III. In this, and in subsequent cases, the supreme court of the state of California held that the statute of limitations would begin to run as soon as the money was in the treasury of the city of Sacramento applicable to the payment of coupons, but that a coupon holder had the right to wait until the city levied and collected taxes, and that no duty was imposed upon him to enforce their levy by writ of mandate. While the city of Sacramento could not be sued in a direct action, any coupon holder had the same right by mandate to compel the levy of a tax at any time after his coupons

became due, as the holder of a Lincoln county coupon would have to compel the levy of the tax in this case after his coupon became due.

*Robt. M. Beatty*, Attorney-General, and *T. J. Osborne*, District Attorney, for Respondent:

I.   A county warrant payable out of any money in the treasury appropriated for county expenditures is a written acknowledgment of indebtedness, and, if not paid when presented, may be sued on by the legal holder, although there is no money in the treasury. (15 Am. and Eng. Ency. 1219, note 1, citing *Clark* v. *Des Moines*, 10 Iowa, 199; *Bank* v. *Franklin Co.*, 65 Mo. 105; *Terry* v. *Milwaukee*, 15 Wis. 490; 10 Wis. 44, 76, 63; 24 Wis. 382; 19 Iowa, 450; 67 Iowa, 697; 11 Barb. 117; *Lyall* v. *Saper Co.*, 6 McLean (U. S.) 446.)

II.   But it can hardly be questioned that the right to sue accrued at maturity. The holders of nearly all the Lincoln county bonds deemed it necessary or expedient to bring suit, and after a contest they obtained judgments without the money being in the treasury to meet their obligations. A civil action in the state can only be commenced within the period prescribed by the statute after the cause of action shall have accrued. (Gen. Stats. 3629.)

III.   It is a matter of regret that the cases of Luning and others against Lincoln county were not more carefully considered in the circuit and supreme courts of the United States. They both seem to have overlooked the fact that Sacramento could not be sued on its bonds, and that no cause of action ran in favor of the holder. Judge Sabin said in his decision: "I should have little hesitancy in holding the coupons barred, did I not consider them, under the authorities above cited (the cases in 17 and 65 Cal.), withdrawn from the operation of the statute." The opinion of Justice Brewer, whose abilities as a jurist are of a high order, followed in the same strain, and was based on the same authorities, and, paradoxical as it may seem, the conclusion cannot be avoided that these courts held that the statute did not run against certain coupons while suit could be brought, and gave judgment accordingly, because the supreme court of California had decided that bonds did not outlaw while

suit could not be maintained on them. The distinction is a broad one, but apparently was overlooked by inadvertence in the Luning decisions, which were based partly on *Freehill* v. *Chamberlain*. These California cases are cited and affirmed in *Sawyer* v. *Colgan*, 36 Pac. 583, but the court there still bases its opinion on facts and reasons which do not exist here. The bonds were to be paid when a surplus came into the treasury, and this contingency did not happen until 1890. The court said: " Prior to that time the petitioner never could have maintained a mandate for the payment of his coupons, and, this being so, of course the statute of limitations is no bar to the proceedings. * * * He .could not sue the state because there never was any act authorizing him to sue."

IV.   If the time has expired for the institution of suit on these bonds, the right of *mandamus* is barred beyond question, but there are further reasons for holding that this proceeding is too late. The writ of mandate to enforce collection of a judgment against a municipal corporation is in the nature of a legal equivalent to the statutory execution, and the right to prosecute it for such purpose is limited to the same period of time within which execution may be sued out on a judgment against an individual. (15 Am. & Eng. Ency. 1314; *U. S.* v. *Oswego Tp.*, 28 Fed. 55.)

V.   The board of county commissioners has not levied or collected any tax for the payment of these bonds or interest during the last eleven years, and though the petitioner did not have a judgment, he was entitled to one, and without it he could have mandamused the board equally as well from the time of their first failure to levy the tax, and there seems to be no good reason why his right to the writ should not be barred in the same length of time it would have been if he had held a judgment.

By the Court, BIGELOW, C. J.:

So long as the right of action upon the coupons upon which this application is founded is not barred, the petitioner is entitled to the writ of mandate applied for. By the act of 1877 they were to be paid as fast as the annual levy of 45 cents on each $100 of property in the county would produce sufficient

money therefor.  How soon that would be would, of course, depend upon the amount of property in the county, and the amount of coupons that might be presented under the act, and the order of their presentation.  They might be paid in one year and they might not all be paid in twenty years. The creditor accepted this proposition when he presented his coupons and had their presentation certified by the treasurer. This was in the nature of an agreement for an extension of time for their payment.  The creditor agreed to wait, no matter how long it might take, for payment under that arrangement, and he has waited accordingly.  As long as the tax was being levied and collected there was no occasion for him to bring an action, and if he had it seems very probable it could not have been maintained, had the proper defense been made.  But when the money was collected he would be entitled to it; then his cause of action would be fully ripe, and if not prosecuted within the statutory period would doubtless be barred.  If not levied or collected, his remedy would be the one he is now pursuing to compel the officers to do their duty in the premises.

This is in accordance with the view taken by the supreme court of the United States, upon coupons in all respects identical with those involved here, in the case of *Lincoln Co.* v. *Luning*, 133 U. S. 529.  We quote from that decision as follows:  "The coupons, which by the general limitation law would have been barred, were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted.  Thereupon the treasurer registered them as presented, in accordance with the act of 1877, and from the time of their registration to the commencement of this suit there was no money in the treasury applicable to their payment.  This act, providing for registration and for payment in a particular order, was a new provision for the payment of these bonds, which was accepted by the creditor, and created a new right upon which he might rely.  It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait.  It amounted to a promise on the part of the county to pay such coupons as

were registered, as fast as money came into the interest fund; and such promise was by the creditor accepted; and when payment is provided for out of a particular fund, to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided."

That this has become the settled law applicable to such cases is further shown by the decision of *Sawyer* v. *Colgan*, 102 Cal. 283, 292, where, in the course of its opinion, the court remarked: "It is a general rule that when payment is provided for out of a particular fund, or in a particular way, the debtor cannot plead the statute of limitations without showing that the particular fund has been provided, or the method pursued." See, also, 1 Wood, Lim., 2d ed., 363; *Underhill* v. *Sonora*, 17 Cal. 172; *Freehill* v. *Chamberlain*, 65 Cal. 603.

Judgment reversed and cause remanded for further proceedings in accordance with this opinion.