[No. 6758.]

BERKEY, ADMINISTRATOR, v. BOARD OF COMMISSIONERS
OF THE COUNTY OF PUEBLO.

1. **Mandamus—Where Proper**—No action lies upon county or municipal bonds issued under the territorial act of Jan. 10, 1868 (Rev. Stats., 1868, c. XVIII, § 52, p. 134). Mandamus to compel the levy of the tax prescribed is the proper and sole remedy.—(109)

2. **Taxes—Levy to Pay Bonded Debt of County**—Under Gen. L., § 446 (Rev. Stats., § 1204), the county commissioners have power to at any time levy a tax for the payment of an indebtedness of the county contracted prior to July 1, A. D. 1876. The provisions of the revenue act of 1902, § 212 (Laws 1902, c. 3, Rev. Stats., § 5760) have no application to such a case, and in nowise detract from the power and duty imposed by the other

statute. The act of 1877 is imperative, and the board has no discretion to refuse the levy.—(111)

Even in the absence of any such enactment as the act of 1877, a case being shown entitling the relator to the levy, it should be ordered to be made at a later day than that fixed by law for the levy of general taxes, if that day has already passed. —(112)

3.   Limitations—Mandamus—Mandamus to enforce a private right is barred by lapse of time, only where an ordinary action upon such right is barred by statute.—(116, 117)

4.   ——Where the debt is payable out of a particular fund, or in a particular way, with an affirmative duty imposed upon the indebted party to provide that fund, he will not be heard to plead the statute, until he makes it appear that he has provided the fund or pursued the particular method prescribed.—(117)

5.   ——County Bonds—Interest—Where the bond of a county by its express terms bears interest, the interest runs with the principal, and an action therefor is barred only when barred for the principal. The coupons for interest attached, are but an incident of the debt and are not barred until the principal is barred.—(118)

6.   Interest—When Interest Matures—Where a bond provides for the payment of interest annually, the bondholder may, without waiving any right, allow interest to accumulate until the maturity of the principal.—(118)

7.   Foreign Executor — Action By—An executor to whom letters have issued from the proper court of another state may, upon complying with sections 76, 77 of the Statute of Wills (Laws 1903, c. 181; Rev. Stats., §§ 7152, 7153) prosecute an action in the courts of this state without taking out letters here.—(119)

*Error to Pueblo District Court*—Hon. C. S. ESSEX, Judge.

Messrs. McCORKLE & McCORKLE, for plaintiff in error.

Mr. ALVA B. ADAMS, for defendant in error.

On October 6, 1874, Pueblo county issued bonds, in aid of the Pueblo and Salt Lake Railway Company, for $350,000.00, and received in exchange a like amount in stock of the railway company. The bonds matured thirty years after date. They were

redeemable, at the pleasure of the county, within that period, at the office of the railway company in the city of Pueblo. Of this bond issue plaintiff below, plaintiff in error here, owns $2,000.00, which are, with continuing interest, unpaid. The entire balance, $348,000.00, of the issue has been liquidated. In January, 1908, both written and oral demand was made upon the defendant, the board of commissioners of Pueblo county, defendant in error, for payment of these bonds and interest, or for a levy upon the taxable property of Pueblo county, sufficient in amount for that purpose. At the same time the bonds, with attached interest coupons, from May 1, 1878, to October 6, 1904, were presented for payment. In November, 1907, demand for payment, accompanied by the bonds and interest coupons, as above, was made on the state treasurer of Colorado. The state treasurer indorsed on each bond so presented a statement to the effect that Pueblo county had never deposited any money there to pay either the interest or principal of the bonds, or the interest or principal of any bond of the issue of which these bonds were a part. Nor had he ever been directed by the board of commissioners of Pueblo county, or authorized, to pay any of the bonds of that issue or the interest thereon.

The office of the Pueblo and Salt Lake Railway Company was long since discontinued in Pueblo, and in February, 1908, the bonds with the coupons attached, as last above indicated, were presented to the county treasurer of Pueblo county for payment, and payment refused, because there were no funds in the county treasury to pay either the principal or interest thereof. On April 30, 1908, the defendant having failed to take any action looking to a compliance with the demand made, this suit was brought for a peremptory writ of mandamus directed to the board of com-

missioners of Pueblo county, requiring it to make a levy upon the taxable property of the county, sufficient in amount to discharge this debt, in accordance with the provisions of an act entitled: ''An Act Relating to Railroads, Wagon Roads and Mining Companies, Subscription to Stock, Issue Bonds, Taxes to Pay Interest and Principal by Counties, Cities and Towns, and for Other Purposes,'' passed by the general assembly of the territory of Colorado, and approved by the governor of said territory January 10, 1868, under which act said bonds were issued; and also pursuant to and in compliance with an act of the general assembly of Colorado, entitled: ''An Act Relating to Bonds and Interest Thereon Heretofore Issued by the Counties, Cities and Towns,'' approved March 9, 1877, relating to this and like indebtedness.

For return and answer to the petition defendant's claim is in substance and effect:

That the complaint does not state facts sufficient to constitute a cause of action;

That plaintiff, as appears from his complaint, has no legal capacity to sue, being an administrator *de bonis non* with the will annexed of the estate of Isaac Phelps, deceased, under letters of administration out of the probate court of Kent county, Michigan, but fails to show that he has been appointed or authorized by any court, having jurisdiction within the state of Colorado, to act as such administrator here;

Bar of both the three and six-year statutes of limitation;

Laches. In that plaintiff has failed and neglected, for an unreasonable period of time, to commence any action or proceeding for protection to, or enforcement of, his alleged cause of action; that no interest has been paid upon said bonds or coupons

since May 1, 1878; that plaintiff has heretofore made no demand for payment, and has commenced no action to compel the levy of a tax to pay same; and,

That at the time of making the demand for the special tax levy, the annual tax levy for the year 1908 had been made and certified, and no further taxes on any account could be levied or assessed until the last quarter of the year 1908, this suit having been begun meanwhile, it was beyond the power of the board to comply with the demand for a special levy.

Issue is joined on certain allegations of the complaint, and other defenses are pleaded, but the foregoing are the main ones, and are those covered in oral argument.

In the court below plaintiff filed a general demurrer to each separate defense from two to six inclusive, and a motion to strike out practically all of the matter contained in the seventh and eighth defenses, except its denials. At the conclusion of argument on the demurrer and motion, the court dismissed the action, on the ground that it was without jurisdiction in such a proceeding to determine the disputed rights of the parties, and declined to pass upon either the motion to strike or the demurrer. Plaintiff brings the case here on error to review the judgment of dismissal.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Under the pleadings there is practically no disputed fact question. The controversy fairly presents only matters of law, including the question of the propriety of the remedy through which relief is sought.

Counsel for defendant, at the oral argument, very properly suggested that he would not argue that

mandamus is not the remedy, in view of the Colorado decisions directly in point on that proposition, but would seek rather to sustain the lower court in its judgment of dismissal on other grounds.

The bonds in question were issued under a special territorial act approved January 10, 1868, by the terms of which it was made the affirmative duty of the board of county commissioners to levy and assess a special tax annually, upon the taxable property of the county, in amount sufficient to pay accruing interest, and eventually the principal. The statute is positive and mandatory. The method therein provided for payment is exclusive. No action for a money judgment on the bonds would lie. These bonds can be paid only through a levy of a special tax by the county commissioners for that purpose. If that body neglect and refuse to make such levy, mandamus to compel the same is the sole remedy. This has been ruled by this court, in a case precisely in point, *Board of County Commissioners v. Sims,* 34 Colo. 434, and it is idle to discuss or consider that question further.

Counsel argues for an affirmance of the judgment on four specific grounds:

First. That the petition is insufficient, in that it shows upon its face that the defendant board was without power to make the levy as demanded, because the levy for 1908 had already been made, and this suit was brought before that for 1908 was made;

Second. That plaintiff is without legal capacity to sue;

Third. That the three-year statute of limitation is a bar to the action by mandamus; and,

Fourth. That plaintiff has been guilty of such laches, in failing to present and urge payment of his claim, that he ought not now to be permitted to recover thereon.

The demand for payment of the bonds and interest was made in January, 1908, after they had matured, and the demand for the special tax levy to provide for such payment was made in March next thereafter. It is said by defendant that it was beyond its power to make such levy, because levies under the statute can only be made in the last quarter of the fiscal year. When the demand came the levy for 1908 had already been made. No further levy by the board was competent until October following. This suit was instituted meanwhile, on April 30th, therefore it was impossible for the commissioners to lawfully make the levy, hence no cause of action is stated.

Sec. 5760, Rev. Stats. 1908, upon which defendant relies, is as follows:

"On the first Monday in November in each year, the board of county commissioners shall by an order to be entered of record among their proceedings, levy the requisite tax for the year, for school and other county purposes as required by law, and the same may be levied at any time prior to the first Monday of November, if the statement of the rate of tax to be levied for state purposes has been received from the Auditor. If, for any cause, the commissioners shall not be able to levy such taxes on or before the first Monday of November, in any year, they may make such levy at any time."

This provision has no application to the levy to pay these bonds. It is limited by its very terms to the levy of taxes for general county purposes. By the terms of the Railway Aid Bond Act itself, under which the bonds in question issued, it is provided that the tax so levied shall be collected as are other taxes, but there is no limitation as to when the levy shall be made. The only limitation is that these taxes shall be collected as other taxes are. In 1877

the act of 1868 was substantially re-enacted, and precisely so in the matter of the levy and collection of taxes to pay these bonds. Further, there was no general provision then in our laws limiting the time of levy, but on the contrary this provision was then in force, and yet is, being sec. 1204 of Rev. Stats. 1908, as follows:

"The board of county commissioners of each county shall have power at any meeting:   *   *   *

"4th. To apportion and order the levying of taxes as provided by law, and to contract loans in the name and for the benefit of the county, for the purpose of erecting necessary public buildings, making or repairing public roads or bridges, when such loans have been authorized by a vote of the legal voters of the county, and for the payment of the debts of the county, contracted in accordance with law, prior to the first day of July, A. D. 1876."

This is the section of the statute which has reference to debts like the one in suit. It is a special provision exactly in point and covering this precise situation. It, by express terms, gives the board of county commissioners power at any time, to apportion and order the levying of taxes as provided by law, for the payment of the debts of the county contracted in accordance with law prior to July, A. D. 1876. This debt is strictly within this statute, and the commissioners not only had the power to levy the tax at the time the demand was made, but it was their duty to do so. They had no discretion in the matter. Both the act of 1868 and of 1877, looking to the payment of the interest and principal of the bond issue, a portion of which is here involved, provide in effect, and make it the affirmative duty of the board to duly levy and assess a special tax annually, upon the taxable property of the county, in amount sufficient to pay the interest coupons, when

and where due, upon all such bonds; and after ten years from the date of the issuance of said bonds the county shall provide by taxation to pay at least five per centum of the principal of such bonds annually thereafter, and all interest thereon due, until the full amount of such bonds have been paid, purchased or redeemed. A conclusive answer to this contention is therefore found in the statutes themselves.

Still, even if the statutes were otherwise, this contention is not sound. The petition states grounds for relief against the commissioners to take effect at the earliest day upon which they could lawfully levy the tax. The contention is that the demand for a levy occurring in the spring of 1908, it was too late for the levy of 1907 and too early for that of 1908. A court has power to grant the writ requiring a future levy at the regular time fixed by law therefor, if the facts show that the petitioner has a cause of action, and the conduct of the defendant justifies the belief that it has no purpose to act at any time. Were the contrary true, the defendant board might ever contend, as it does now, that there has been no refusal, hence the action does not lie; and it might thus always insist either that an action was too late, as the levy had been already made, or too early for a future levy, as the time for that had not yet arrived, and there having been no refusal, the board abstaining from specifically doing so, an action would then be premature. Thus a complainant with a just cause, his remedy by mandamus being exclusive, might, upon trifling pretexts, be forever barred of his right, it being forever and ever either too early, or else too late, for the board to comply with the demand. The law does not contemplate such a possibility. Neither will it be tolerated. To so hold, and thus allow and approve a premeditated and planned evasion, would be a mockery of justice. Had defendant, by answer

and return to the writ, said that it was its purpose to make the levy at the earliest time that it could lawfully do so, then there would be force in its position, especially if the statute were as contended for by it. But it is manifest, from the pleadings, that there is no such purpose; on the contrary, from the answer and return, it is plain that the defendant does not intend to pay, or make provision for the payment of, this claim, unless compelled to do so by judicial order and decree.

"Where a statute imposes upon a city, county, levee district, or other municipality, or upon a particular officer, board, or tribunal, a clear legal duty to levy a special tax to pay judgments, bonds, warrants, or other allowed or fixed indebtedness, or interest thereon, or to provide a sinking fund for payment at a future day, mandamus will lie on the relation of a person interested to compel performance of such duty."—26 Cyc. 325, and authorities there cited.

"A comptroller-general was required each year, on or before the 15th day of November, to notify the county auditors what per centum was to be levied on property as a tax to pay the interest on the state bonds then due, in arrear, and to become due during the coming year. The comptroller gave such notice, omitting from his calculation certain state bonds. It was objected that the application was premature relative to the next year, and too late relative to the year just passed, inasmuch as the county auditor and the other county officers had acted on such notices, and the law did not authorize any subsequent notice. The court considered such conclusion to be a parody on justice. It considered that, giving the statute and rules of law a reasonable construction, a refusal by the respondent to perform his duty, even before November 15th, must be considered as equivalent to a total want of performance for all remedial

(8)

purposes, inasmuch as the 15th day of November was fixed, not as the day proper for the doing of the act, but as a period to mark the default of the respondent should it remain unperformed, and therefore as he might perform on a previous day, refusal on such day to perform altogether is evidence of a default as affecting the right of a party to a civil remedy. The court stated that, if the respondent in his return had denied the fact of refusal, or had alleged his willingness to perform, such allegation, if undisputed, would have ended the matter."—Merrill on Mandamus, page 282.

Speaking to the question here under consideration, the supreme court of the state of Massachusetts had this to say:

"Applications for writs of mandamus being addressed to the sound judicial discretion of the court, the circumstances of each case must be considered in determining whether a writ of mandamus shall be granted; and the court will not grant the writ, unless satisfied that it is necessary to do so in order to secure the execution of the laws. But when the person or corporation, against whom the writ is demanded, has clearly manifested a determination to disobey the laws, the court is not obliged to wait until the evil is done before issuing the writ."—*Attorney General v. Boston*, 123 Mass. 466-474.

The supreme court of Texas, in a recent case, having under consideration a like question, said:

"Insistence is made that appellee is not entitled to a tax levy because as to the future, his action is premature, and, as to the past, it is too late to make a lawful levy. This claim demands careful scrutiny, since its effect, if sound, will be to destroy a solemn contractual obligation either 'on the upper or nether millstone,' as it would be an easy matter to fight off the execution of a mandate beyond the year. The

writ of mandamus, being a command based on default of duty, cannot go to the future in advance of default; but there is no reason why it may not extend to the future in redress of a past default, and we hold that it may.''—*City of Austin v. Cahill,* 99 Tex. Rep. 172, 196.

It was held in effect by the supreme court of Washington that, after reasonable time, from a request to levy an assessment to pay public improvement warrants, the county commissioners may be compelled to act by mandamus, and relator is not postponed until commissioners have definitely refused to act.—*State ex rel. Seymour v. Slater et al.,* 53 Wash. 608.

The writ here is sought to compel the levy of a special tax to pay a debt, which ought, as matter of law, long since to have been provided for by annual levy and collection. Plaintiff seeks simply to compel the board to discharge a duty, concerning which it has been for years in default.

On the subject of limitations. Neither the bonds themselves nor the interest coupons are barred. By their express terms the bonds did not mature until October 6, 1904, and suit was begun about three and one-half years thereafter. The six-year statute is the one by which the bonds might be barred, and clearly they are not barred by it; since the bonds themselves are not barred, the interest coupons, which are a mere incident to the main debt, are not barred. The interest is provided for in the body of the bond, as a part and parcel of it, and is enforceable without reference to the attached coupons. The contract between plaintiff and defendant for interest is found in the bond itself. The coupon is but a convenience, serving the office of a receipt, for use when interest is paid. The interest runs with the principal of the bond and is only barred when it is barred.

This precise point is determined in *First National Bank v. Park,* 37 Colo. 303. All the authorities, federal and state, are practically unanimous to this point, and further citation is unnecessary.

Does the three-year limitation statute bar the action of mandamus? We think not. This statute does not bar the bonds, either as to principal or interest. Mandamus is, as we have already seen, the only remedy to compel payment. It logically follows then that this statute does not bar the remedy. To say otherwise would in effect permit that to be accomplished indirectly which may not be done directly. The limitation applicable to the bonds is applicable to the remedy. The statute not having run against the claim itself, the exclusive remedy by which it may be enforced ought not to be barred.

"The better considered doctrine, and that which is supported by the clear weight of authority, is that the statute of limitations which governs the subject-matter or right in question, and which would bar an ordinary action at law for the enforcement of such right, applies also to proceedings in mandamus if it is enforced."—High's Extraordinary Legal Remedies (3d ed.) 38, and cases cited.

In 26 Cyc., page 395, this is said, which is directly in line with the views above expressed:

"In states wherein the statutes of limitations do not apply directly to mandamus proceedings it is common to apply them by analogy; and while it is difficult to lay down any fixed rule as to the time when the writ will be barred, it may be said in a general way that it must be brought within the period fixed for that particular form of civil action or proceeding which may be brought to enforce the right which is the subject of the writ; and on the other hand, that mandamus may be instituted at any time within that period."

With us the statute of limitation does not apply directly to mandamus, and the foregoing authorities are therefore in point.

Beside, on principle and authority, where payment is provided for in a special way, and out of a particular fund, with the affirmative duty upon the defendant to provide that fund, and make application of it as required by law, he may not set up and rely upon the statute of limitation, until he first shows that he has complied with the terms of the statute, and is himself within the law. This principle is recognized in all of the cases, and upon it the decisions are in harmony.

"There is a general rule that, when payment is provided for out of a particular fund, or in a particular way, the debtor cannot plead the statute of limitation without first showing that the particular fund has been provided, or that the particular method prescribed by statute has been complied with.   *   *   * The bonds and coupons herein sued upon were by the statute authorizing their issuance, payable out of a particular fund, which was never provided for by Alturas County."—*Robertson v. Blaine County,* 90 Fed. 63, 70.

"It is a general rule that when payment is provided for out of a particular fund or in a particular way, the debtor cannot apply the statute of limitation without showing that the particular fund has been provided or the method pursued."—*Sawyer v. Colgan,* 102 Cal. 283; *Davis v. Lincoln County,* 23 Nev. 262; *Lincoln County v. Lenning,* 133 U. S. 529; *Bibb County v. Ore,* 25 Cyc. 1068.

"If the warrant is payable out of a particular fund, the county cannot avail itself of the statute of limitations without first showing that it had provided such fund."—11 Cyc. 546.

Neither at the time of the maturity of the bonds, nor at any subsequent date, has there been in the county treasury, or any other place of payment named in the bonds, sufficient money to pay those held by the plaintiff. There is no claim to this effect, hence the defendant is not in position to rely upon and apply the limitation statute.

Well within the bar of the statute, demand was made for payment, or for the levy of a special tax for that purpose. The plaintiff has been at all times within his legal rights, and they are unaffected by any limitation statute or laches. The bonds are like promissory notes. By their terms the bonds matured October 6, 1904, and while they call for annual interest, such interest did not mature until the principal did, any more than does the annual interest on a promissory note mature before the principal. While the bondholder could collect his interest annually, he was not compelled to do so. He might, as in this case, allow it to run until the bonds matured, without losing or waiving any right. The clear legal duty was upon the board to levy and collect annually a special tax, sufficient in amount to pay the interest, and after ten years to levy and collect annually five per cent. of the principal of the bonds, in addition, and have the whole ready for payment against the maturity of the bonds and interest. It is true the option was with the county to pay at the expiration of ten years, but in order to exercise that option personal notice must have been brought home to the bondholder of its election so to do. There is neither claim nor pretence that this was done, and, in the absence of such personal notice, an attempt to foreclose plaintiff from the collection of his continuing interest, is futile.

If fault is to be charged to anyone it must be

against the board, because of its failure to make provision, as commanded by statute, for the payment of this indebtedness.   What moneys the county may have collected in the past for this purpose have admittedly been diverted to other sources.   For all of these years it has enjoyed the use thereof, and has derived the profits, benefits and advantages accruing therefrom.   It is no hardship that it be now required to pay plaintiff, according to the very terms of, and in the manner provided by, the bonds themselves.

All of the substantial facts are admitted.   The validity and identity of the bonds.   That they were issued for value and were unpaid.   That all other like bonds have been discharged.   The entire issue was refunded and the proceeds therefrom, so far as applicable to the bonds in suit, diverted by the county. On the merits, plaintiff's right is clear and indisputable, as against any defense yet suggested. Although we have not reviewed in detail each claim of defensive matter, still we have carefully considered them all, and are persuaded, that, at least in the present state of the pleadings, except as to a formal amendment to the petition hereinafter referred to, the writ should go.   Also, and particularly, that the court below was in error in dismissing the petition on the ground as stated, that it had no jurisdiction of the subject-matter by mandamus.

On the question of plaintiff's legal capacity to sue, the record shows that duly authenticated copies of his official bond and letters testamentary issued out of the probate court of Kent county, Michigan, were filed with the clerk of the court below, in compliance with secs. 4733 and 4734 of Mills' Ann. Stats., vol. 3, page 1315.   The proper practice is to incorporate copies of these documents in the body of the petition itself, and plaintiff should be allowed to so amend.

The judgment is reversed and the cause remanded, for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.

Decided April 4, A. D. 1910; rehearing denied June 6, A. D. 1910.