No. 10,696.

CARTER, ET AL. *v*. BADGER IRRIGATION DISTRICT, ET AL.

Decided April 6, 1925.

Action to enjoin tax levy for the payment of irrigation district bonds. Judgment of dismissal.

*Affirmed.*

1.  BONDS—*Irrigation Districts—Illegal Use.* Where bonds are regularly issued by an irrigation district for a lawful purpose, holders thereof are unaffected if the bonds are put to an illegal use.

2.  *Judgment—Effect on Holders.* Judgment in favor of an intermediate bond holder against his assignor for damages for false representations made to induce a sale of the bonds, held not to affect subsequent innocent bond holders.

3.  *Defaulting Interest—Non-collection—Effect.* While a bond holder may collect his interest when due, he is not compelled to do so, but may allow it to run until the bonds mature without losing or waiving any right.

4.  IRRIGATION DISTRICTS—*Taxation—County Commissioners.* A board of county commissioners has no authority to pass any resolution abating taxes or excluding lands from an irrigation district to the injury of district bond holders.

5. VENDOR AND PURCHASER—*Irrigation District Lands—Title—Notice.* A purchaser of land within an irrigation district is bound by the constructive notice afforded by the county records concerning such district.

6. IRRIGATION DISTRICTS—*Bonds—Taxation.* A levy of $51.20 an acre on the lands within an irrigation district for payment of bonded indebtedness, upheld.

*Error to the District Court of Morgan County, Hon. L. C. Stephenson, Judge.*

Messrs. MELVILLE & MELVILLE, Messrs. COEN, MALLORY & PAYNTER, Mr. W. GRIFFIN TEMPLE, for plaintiffs in error.

Mr. GEO. W. TWOMBLY, Mr. S. R. STEPHENSON, Messrs. HODGES, WILSON & ROGERS, Mr. HENRY C. VIDAL, for defendants in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THIS action was instituted by Jean S. Gregg who sued on her own behalf and on behalf of all others similarly situated. On June 10, 1922, she filed an amended complaint. On December 26, 1922, and after judgment for defendants in the court below, Jean S. Gregg died. On June 8, 1923, this court ordered the substitution of Fowler as administrator of decedent's estate, and Thompson and Tenhaeff, two land owners who were similarly situated, as plaintiffs in error here.

After the decedent's estate had been settled and the administrator discharged, permission was granted by this court to substitute Nettie S. Carter and Mary F. S. Crane, as plaintiffs in error, they being the residuary devisees under the will of the decedent and the successors in interest in the land, owned by Mrs. Gregg, which is in controversy here.

The plaintiff seeks, in this action, to enjoin the defendant trustee and the county officials from at any time attempting to levy or collect taxes for the payment of a $250,000 bond issue of the Badger irrigation district, and from selling the land of plaintiff, and of other land owners in the district, for such taxes, and other injunctive relief.

A general demurrer was filed to the original complaint, which by leave of court, was treated and considered as a demurrer to the amended complaint. The trial court sustained the demurrer, and plaintiff electing to stand on the complaint as amended, judgment dismissing the action was entered. This writ of error is to review that judgment.

The Badger irrigation district was organized February 15, 1909, pursuant to the laws then in force, which provided for the creation of irrigation districts. It appears that the district has never been dissolved; that it has not now and has not had for several years, any board of directors, or other officers.

At the outset we may observe that no question is raised as to the legality of the organization of the irrigation district, nor is there any attack made on the validity of the bond issue. It is, however, claimed that, although the district was organized ostensibly for the purpose of irrigating 16,200 acres of land, it in fact was organized for the purpose of allowing its promoters, who owned 3,200 acres of deeded land in the district, to bond the lands and dispose of the bonds at a profit.

The 13,000 acres, which it is alleged made up the 16,200 acres, was government land and was not in the district when it was organized or when the bonds were voted or issued, nor could they have been.

Within three months after the district was organized, the electors of the district voted a bond issue of $250,000, which plaintiff alleges was "ostensibly to be used for the purposes specified in the act", but in fact a portion thereof was, as alleged, used for the purchase of stock in the Badger Creek Reservoir Company, organized by the promoters of the irrigation district, and the balance for a reservoir for the company, and for a ditch and laterals.

It appears that $227,000 of the bonds were issued and passed into the hands of innocent purchasers. There is no allegation that the bonds were purchased after maturity, or were not purchased for a valuable consideration or that they were purchased with notice of any infirmity, and there can, of course, be no such presumption.

The plaintiff's land, a quarter section, formed part of the irrigation district, and she was merely the successor in ownership of those who were promoters of the enterprise, and was in no better position when this suit was brought than the promoters themselves would have been.

The coupons and bonds have not been paid. No water was ever obtained for the irrigation of any of the lands and final proof was never made on the homestead and desert entries, made on the 13,000 acres, and these lands were never included in the district. The Morgan County Bank became the owner of the $227,000 worth of bonds outstanding and sold them to one Clark. In 1911, Clark brought suit in the federal court against the bank and its officers, not upon the bonds but to recover damages in the amount of the consideration paid, for alleged false representations in the sale of the bonds which, he alleged, induced him to buy.

In Clark's action he recovered a verdict (upon which no judgment was entered) for $108,220. In settlement of this verdict Clark accepted $100,000, and the action was dismissed by mutual consent.

It is claimed that this sum should in any event be credited upon the total amount of the bonds. It is alleged that Hodges is the trustee for the holders of all the bonds and coupons issued and outstanding against the district, the names of the bond holders being unknown to the plaintiff.

It is alleged that by reason of Clark bringing his action, by his allegations and proof therein and accepting the $100,000, on account of the bonds and irrigation district property which he alleged to be worthless, not only the public generally but the taxing officers of the county, and

others concerned, believed that he had elected to bring his action against the bank, in lieu of making any demand upon the district for the payment of the bonds and interest; that he did so elect, and the bond holders are, by reason thereof, estopped from collecting the coupons or bonds.

The plaintiff further claims that thereafter no attention was given to the affairs of the district by the different owners of the land, and that the county commissioners, by resolution, abated all irrigation district taxes levied for bond interest purposes, and excluded the lands from the district and from the lien of the bonds, and a public record made and kept thereof; that no levies were thereafter made on the land for these purposes until the board of county commissioners, on November 22, 1920, arbitrarily, and without authority of law, passed a resolution requiring the county officials to take the necessary steps for the collection of the alleged delinquent taxes against the land of plaintiff, and of the other land owners, for the payment of the bond interest on all the bonds of the district for the years 1909 to 1919, inclusive, in the amount of $42.25 per acre, and also for the year 1920, in a sum of $8.95 per acre. It is alleged that after Clark settled his suit against the bank, neither Clark nor any holders of the bonds ever showed any desire or intention to collect any of the bonds or coupons, or ever presented them for payment, or ever showed any interest in the management or welfare of the district, and did no act to apprise any of the officials as to the ownership of the bonds, or show that payment thereof was required, until in the year 1920; that by reason of these facts the holders of the bonds waived the right to further collect thereon, and having misled the subsequent land owners, including the plaintiff, to their injury, the bond holders are estopped to further collect on the bonds or coupons; that at and prior to the purchase of the bonds, Clark, as well as the owners of the 3,200 acres of deeded land, relied upon the "inclusion contracts" entered into with the entrymen upon the 13,000 acres of desert and

homestead lands, whereby the same were to be liable for the payment of their proportion of the bonds and interest, thereby constituting an intended lien, on all the land, of $15.50 per acre to be collected in the nature of special assessments; that Clark and all other bond holders, and the defendant trustee, at all times since the settlement of the Clark Case, had full knowledge that the district organization had been abandoned; that the assessments had been abated; that the lands had been excluded from the district; that the desert and homestead lands were not included in the district, and could not be included as there were no district officers to include them; that the taxing officers of the county were making no levies; that though the records of the county officers showed those facts for several years, no protest was made by the holders of overdue coupons, or bonds, against said acts, nor was any action taken to correct the records; that by reason thereof the bondholders waived the right, and are estopped, to further collect on the same from the present owners of the deeded land.

The plaintiff purchased her land in the year 1917, and the others similarly situated about the same time. It is alleged that at the time of the purchase they relied, as to title, upon the public records and had no knowledge that the lands were included in the district; that at that time there appeared no transcript of judgments, tax sales unredeemed, or other liens, or that the lands were included in any irrigation district or subject to any irrigation district assessments or taxes; that on January 25, 1921, the county treasurer notified the land owners that the amount of irrigation district taxes was $51.20 per acre, and the amount for the plaintiff's land was $8,192, exclusive of her other taxes.

Plaintiff then alleges that the resolution passed by the board of county commissioners was arbitrary, unreasonable, excessive, confiscating, unlawful, ultra vires and void, for reasons in the amended complaint fully set forth.

It is claimed that before Clark brought his suit the origi-

nal promoters of the district, who owned the 3,200 acres of deeded land, disposed of practically all of their holdings to persons who were ignorant of the true situation respecting the district.

The matters urged, for restraining the collection of the bonds and interest, appear to relate solely to transactions had between persons not parties to this action, and had subsequent to the organization of the district, the voting and issuance of the bonds, and their sale and transfer to innocent purchasers.

If the bonds were issued, as alleged, for an apparently lawful purpose, but in fact were used for a purpose not specified in the act, the bond holders are nevertheless protected, and remain unaffected by the illegal use to which they may have been put. *National Life Insurance Co. v. Board of Education,* 62 Fed. 778, 10 C. C. A. 637; *Hayden v. Aurora,* 57 Colo. 389, 398, 142 Pac. 182; *Atkinson v. Colorado Co.,* 59 Colo. 528, 535, 151 Pac. 457.

The irrigation district could not defeat the bonds in the hands of innocent purchasers and, in the circumstances of this case, plaintiff is in no better position than the district.

We do not perceive any reason why the Clark suit, or anything alleged in connection therewith, should be any defense against the holders of the bonds. It is plain that the Clark action was one for damages incurred by reason of alleged false and fraudulent representations made to induce the sale of the bonds to Clark, and he could recover only what the law fixes as the measure of damages in such cases, and the amount received by him would be credited on the price paid by him to the bank. This could not concern the district, or the tax payers, as they could not claim credit therefor on the amount of the bonds. No part of the money received by Clark, from the bank, was paid on the bonds to the bondholders.

Neither is it material for what reasons Clark settled with the bank for an amount less than the verdict he obtained. The question of the legality or the validity of the bond issue was not raised in Clark's suit against the bank.

How, or in what way, Clark's suit or its result could affect innocent holders of the bonds, or others not parties to the suit, is not apparent.

The contention that the bond holders should be estopped to collect the bonds and interest because they made no attempt to collect the coupons for ten years, can not be sustained. The bonds had not matured, and if the holders wished to postpone the collection of the interest, due them during that period, we see no reason why they should not do so. In *Berkey v. County Commissioners,* 48 Colo. 104, 110 Pac. 197, 20 Ann. Cas. 1109, the Court said: "While the bondholder could collect his interest annually, he was not compelled to do so. He might, as in this case, allow it to run until the bonds matured, without losing or waiving any right."

Nor can it be said that their neglect to collect the interest is any evidence of notice to them of Clark's suit.

Another contention is that the defendant board of county commissioners passed a resolution, without legal authority, which abrogated and annulled the previous resolution of a former board of county commissioners which abated all the irrigation district taxes levied for the purpose of paying bond interest, and excluding the lands from the district.

There was no authority of law for the board of commissioners to pass any resolution abating the taxes, or excluding the lands from the district, to the injury of the bond holders. The board could not by any action which it might take, deprive the bond holders of their security. This appears so self-evident as to require nothing further than the mere statement of the proposition. Such action could, in no event, be taken until the bonds were paid. *Nile Irrigation Dist. v. Gas Securities Co.,* 248 Fed. 861, 865, 160 C. C. A. 619.

As to the claim that, at the time of the purchase of the bonds, Clark, and the owners of the deeded land, relied upon the "inclusion contracts", it is sufficient to call attention to the fact that these contracts were made at the

time Clark purchased the bonds from the bank, and were not in existence at the time the bonds were voted by the owners of the deeded land.

It is manifest that they had no right to rely on these contracts, as the lien of the bonds was upon the 3,200 acres only, and when plaintiff purchased her land she must be charged with notice that the "inclusion contracts" had, long before, been disregarded, and that the homestead and desert lands had not been included in the district.

Plaintiff can scarcely assert, with confidence, that she purchased her land relying, as to title, upon the public records and had no knowledge that her land was included in the district. She alleges that her land was part of the 3,200 acres when the district was organized and it appears to have been purchased by her about eight years after the formation of the district.

The laws, under which the district was organized, required that after the board of county commissioners had declared by an order entered on the minutes of the board, the organization of the district, the board should cause a copy of the order, including a plat of the district, to be immediately filed for record in the office of the county clerk and recorder of the county.

Plaintiff must be presumed to have purchased with knowledge of what these records should have disclosed had they been examined. While the amount levied is now $51.20 per acre, and it is claimed to be confiscatory, we see no way by which plaintiff may be relieved of this burden. It appears to be the amount necessary for the payment of the bonds and coupons, falling due, with the delinquent penalty added. *Interstate Trust Co. v. Montezuma Dist.,* 66 Colo. 219-224, 181 Pac. 123; *Henrylyn District v. Thomas,* 64 Colo. 413, 173 Pac. 541.

In *Michigan Trust Co. v. Otero Irrigation District,* 76 Colo. 441, 232 Pac. 919, 920, which involved the dissolution of the district, Mr. Justice Campbell, speaking for this court, said: "Conceding, but not deciding, because the point is not here involved, that under our irrigation

district act the negotiable bonds and coupons thereby authorized are made payable only out of revenue collected from levies of taxes, still the failure of the revenue officers to collect the levied tax does not operate as a discharge of the indebtedness represented by these unpaid instruments. It still remains a debt as before. * * * Even though the district board has done all that it may lawfully do to gather a fund to pay, this does not constitute a payment or discharge of the debt. Though the particular method of payment prove abortive, the debt remains an obligation of the district until it is paid."

The allegations of the complaint, as to estoppel and waiver, fall short of stating any facts which would operate as an estoppel in favor of the land owners and against the bond holders, or as showing any waiver of the right of the bond holders to collect the bonds and coupons.

A careful examination of the amended complaint satisfies us that the court did not err in sustaining the demurrer and the judgment should be affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE CAMPBELL concur.